UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THERESA K.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     v. | ) No. 1:21-cv-01233-JMS-DLP |
| | ) |
| KILOLO KIJAKAZI, *Commissioner of the Social Security Administration*,[2] | ) |
| | ) |
|     *Defendant*. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Theresa K. applied for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") from the Social Security Administration ("SSA") on September 3, 2019, alleging an onset date of March 24, 2017. [Filing No. 10-5 at 2-5; Filing No. 10-5 at 11-17.] Her application was denied initially on November 27, 2019, [Filing No. 10-4 at 2-9], and upon reconsideration on February 13, 2020, [Filing No. 10-4 at 13-18]. Administrative Law Judge Robert J. Chavez (the "ALJ") held a hearing on October 30, 2020. [Filing No. 10-2 at 30-49.] The ALJ issued a decision on December 21, 2020, concluding that Theresa K. was not entitled to receive benefits. [Filing No. 10-2 at 16-25.] The Appeals Council denied review on

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

March 23, 2021. [Filing No. 10-2 at 2-6.] On May 18, 2021, Theresa K. timely filed this civil action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).³ "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

---

³ The Code of Federal Regulations contains separate, parallel sections concerning SSI and DIB, which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520. 227 F.3d at 868. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Theresa K. was 55 years of age at the time her alleged disability began. [*See* Filing No. 10-5 at 2.] She has completed high school and previously worked as a deli clerk, a cashier, a store laborer, and a nurse aide. [*See* Filing No. 10-2 at 38-39.][4]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Theresa K. was not disabled. [Filing No. 10-2 at 16-25.] Specifically, the ALJ found as follows:

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, Theresa K. had not engaged in substantial gainful activity[5] since March 24, 2017, the alleged onset date.[6] [Filing No. 10-2 at 19.]

- At Step Two, she had the following severe impairments: bipolar disorder and adjustment disorder. [Filing No. 10-2 at 19.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 10-2 at 19-20.]

- After Step Three but before Step Four, Theresa K. had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can perform simple, routine and repetitive tasks, but not at a production rate pace; the claimant can perform simple work-related decisions; and the claimant can have occasional interaction with supervisors, coworkers and the public." [Filing No. 10-2 at 20-23.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Theresa K.'s RFC, she is capable of performing her past relevant work as a store laborer. [Filing No. 10-2 at 23.]

- At Step Five, in the alternative and relying on VE testimony considering Theresa K.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision in representative occupations such as industrial cleaner, packager, and floor waxer. [Filing No. 10-2 at 24-25.]

### III.
### DISCUSSION

Theresa K. argues that: (1) the ALJ failed to properly address Theresa K.'s moderate limitations in maintaining concentration, persistence, or pace and in interacting with others; (2) the

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

[6] Theresa K. previously applied for a period of disability, DIB, and SSI in May 2017, her applications and requests for reconsideration were denied, and Administrative Law Judge Lauren Burstein also concluded that she was not entitled to benefits. [*See* Filing No. 10-2 at 5-14.] Because Theresa K. did not appeal that decision, the ALJ considered whether Theresa K. was disabled only from the date of ALJ Burstein's decision (July 31, 2019), forward – not from her alleged onset date of March 24, 2017. [Filing No. 10-2 at 16.]

ALJ's hypothetical questions to the VE did not sufficiently account for those limitations; (3) the ALJ did not comply with SSR 16-3p in assessing Theresa K.'s symptoms; and (4) the ALJ did not adequately assess certain medical source opinions. The Court will address each issue in turn.

### A. Limitations in Concentration, Persistence, or Pace and in Interacting With Others

Theresa K. argues that the ALJ did not explain how her moderate difficulties with concentration, persistence, and pace are accommodated by limiting her to simple, routine, and repetitive tasks. [Filing No. 12 at 14.] She points to evidence in the record showing that she regularly complained of decreased concentration; she was anxious and fidgety; she had moderate problems with concentration, memory, and mental math calculations; she had psychomotor agitation, racing thoughts, and difficulty concentrating; she became easily overwhelmed in a skills training session; and she demonstrated disorganized thinking. [Filing No. 12 at 14-15.] Theresa K. takes issue with the ALJ's finding that she has friends that she visits with regularly and that she sometimes has trouble getting along with her family, pointing to evidence that she only has one friend she will talk to, frequently has conflicts with her daughter (who she does not talk to anymore), and has struggled with her relationship with her mother. [Filing No. 12 at 15.] She notes that a consultative examiner found that processing thoughts and staying organized are a bigger problem for her than her actual ability to remember, and that she cannot manage her own money, yet the ALJ found she only had mild limitations in understanding, remembering, and applying information. [Filing No. 12 at 15.] Theresa K. argues that the ALJ did not explain the rationale behind his RFC finding, "and particularly that [she] would not have greater psychiatric and behavioral limitations that he concluded." [Filing No. 12 at 16.] She contends that there is no explanation for the ALJ's finding that she is capable of consistent attendance, being punctual, being able to respond appropriately to coworkers and supervisors, and being able to sustain adequate

6

concentration and attention on a full time basis, and that "[t]hese restrictions were seemingly pulled out of thin air with no basis in the evidence." [Filing No. 12 at 16.]

In response, the Commissioner argues that with regard to Theresa K.'s mental work capacity, the ALJ considered "normal psychological clinical findings and normal mental status examination findings from treating psychiatrist Kelly Rhoadarmer, M.D., and examining psychologist Robert Blake, Ph.D., [Theresa K.'s] subjective statements about her impairments and the symptoms they caused, and the prior administrative medical findings of Dr. Hill and Dr. Horton." [Filing No. 13 at 7.] She asserts that Theresa K. has not pointed to any medical source opinions from doctors who treated or examined her, but simply invites the Court to re-weigh evidence. [Filing No. 13 at 7.] The Commissioner argues that the ALJ was entitled to rely on findings from the state agency physicians and psychologists who are "medical experts familiar with the [SSA] regulations," and who "provided a detailed explanation and analysis of the evidence upon which they relied." [Filing No. 13 at 8.] The Commissioner points to records from the state agency reviewing psychologists, Dr. Hill and Dr. Horton, who found that Theresa K. "had mental functional capacity limits for understanding, carrying out, and remembering simple instructions; making judgments commensurate with functions of simple, repetitive tasks; an ability to respond appropriately to brief supervision and interactions with coworkers and work situations; and an ability to deal with changes in a routine work setting." [Filing No. 13 at 8.] She notes that the ALJ found those assessments persuasive because they were consistent with medical evidence indicating that Theresa K. had "generally normal psychiatric examinations and significant improvement and stability with psychotropic and counseling treatments." [Filing No. 13 at 8.] She asserts that moderate limits in maintaining attention, concentration, and pace "do not equate with being completely limited in those areas," and that the ALJ acknowledged those limitations

7

and included "substantially similar limits" in the RFC. [Filing No. 13 at 10-11.] The Commissioner contends that Theresa K. erroneously argues that "certain [RFC] restrictions can never accommodate" moderate limitations in concentration, persistence, and pace, and that the state agency psychologist's opinions supported the ALJ's RFC finding. [Filing No. 13 at 11-12.]

In her reply, Theresa K. does not specifically address the Commissioner's arguments but instead argues generally that the Commissioner has offered "post hoc justifications" that "cannot make up for the ALJ's failure to articulate, explain, or grapple with the evidence." [Filing No. 14 at 1.]

### 1.  *Difficulties in Concentration, Persistence, and Pace*

The ALJ found that Theresa K. has moderate limitation in concentrating, persisting, or maintaining pace. [Filing No. 10-2 at 19-20.] Specifically, the ALJ noted that Theresa K. watches television and is able to somewhat follow what she is watching, can do puzzles, can follow simple instructions, and that a function report indicated that she had intact thought processes and content. [Filing No. 10-2 at 19-20.] The ALJ did acknowledge, however, that Theresa K. had trouble with concentration and completing tasks. [Filing No. 10-2 at 19-20.] The ALJ limited Theresa K. to "simple, routine and repetitive tasks, but not at a production rate pace," "simple work-related decisions," and "occasional interaction with supervisors, coworkers and the public." [Filing No. 10-2 at 20.]

"Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record." *Urbanek v. Saul*, 796 Fed. App'x 910, 915 (7th Cir. 2019) (internal quotation and citation omitted). The ALJ pointed to the following medical evidence in support of his RFC finding:

8

- Theresa K. had bipolar and adjustment disorders, but had improved with psychotropic medications and counseling treatments. [Filing No. 10-2 at 21.]

- September 2019 treatment notes indicated that her mental health was stable. [Filing No. 10-2 at 21.]

- She re-opened her mental health treatment in November 2019 to process her father's impending death but was doing well on psychotropic medications in June 2020 and her grieving was resolving with time. [Filing No. 10-2 at 21.]

- In August 2020, she reported that she did not have racing thoughts or irritability, she did not have suicidal ideation, she worked on word-search puzzle books, she was oriented with appropriate mood and affect, and she was doing alright on her current medications. [Filing No. 10-2 at 21.]

- Dr. S. Hill and Dr. B. Randal Horton, both medical consultants for Disability Determination Services, opined in November 2019 and January 2020 that Theresa K. had a moderate limitation with concentration, but could understand, carry out, and remember simple instructions, make judgments commensurate with functions of simple, repetitive tasks, respond appropriately to brief supervision and interactions with coworkers and work situations, and deal with changes in a routine work setting. [Filing No. 10-2 at 22.]

- A November 2019 consultative evaluation report from Dr. Robert Blake outlined that Theresa K. felt sad but did not have suicidal thoughts; had concentration and memory problems; watched television most of the day; had appropriate, clear, coherent, and logical speech; had moderate problems with concentration, memory, and mental math calculations and emotional and cognitive problems that would significantly affect her ability to work; and had no significant problems with her abstracting ability, general knowledge, or judgment. The ALJ found persuasive Dr. Blake's finding that Theresa K. had moderate limitations with concentration, but did not find persuasive his finding that she could not manage her own funds because she had testified at her hearing that she manages her own finances. The ALJ also pointed to Dr. Blake's findings that Theresa K. takes and tracks her medications and appointments on her own, is living alone, is able to perform personal care and grooming, can perform household chores, and can prepare simple meals. The ALJ rejected Dr. Blake's assessment that Theresa K. had schizoaffective disorder, noting that it was not consistent with treatment records or the record as a whole. [Filing No. 10-2 at 22.]

- A lack of evidence that Theresa K. got significant treatment for her mental impairments, even though she claimed they were disabling. [Filing No. 10-2 at 23.]

9

Theresa K. takes issue with the ALJ's failure to consider evidence of decreased concentration, pointing to her own hearing testimony in which she stated that she has "trouble concentrating on tasks," [Filing No. 10-2 at 39]; a medical record from October 11, 2018 which states that she complained of loss of concentration and being fidgety, [Filing No. 10-7 at 24]; a medical record from November 6, 2018 in which she complained of decreased concentration, [Filing No. 10-7 at 27]; a November 18, 2019 Disability Evaluation by Dr. Blake in which she stated that her lack of concentration would make it difficult for her to work, [Filing No. 10-7 at 49]; records from a counseling session on January 10, 2020, in which she stated that she had racing thoughts and difficulty concentrating, [Filing No. 10-7 at 124]; and records from a counseling session on August 25, 2020, in which she stated that she had difficulty concentrating, [Filing No. 10-7 at 155].

While these records do indicate that Theresa K. has complained of decreased or poor concentration, the ALJ acknowledged these complaints and, consequently, limited her to simple, routine, and repetitive tasks. [*See* Filing No. 10-2 at 22-23 ("Based upon allegations of poor concentration, I have limited claimant to simple, routine and repetitive tasks, and only occasional interactions with others due to possibility of distraction.").] Theresa K. does not explain why these limitations were insufficient to account for her concentration issues, appearing to argue instead that the limitations are *per se* inadequate. Indeed, Theresa K. does not point to evidence in the record indicating how her difficulties with concentration would affect her ability to complete simple tasks. And Drs. Hill and Horton both found that, despite her concentration issues, Theresa K. could carry out simple tasks. In short, Theresa K. has not explained why the limitation to simple, routine, and repetitive tasks does not sufficiently accommodate her concentration difficulties, nor has she suggested additional restrictions that should have been included in the

10

RFC.[7]  See *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("Because [the claimant] did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand.").

Based on the medical evidence, the ALJ's limitation of Theresa K. to simple, routine, and repetitive tasks adequately accounted for the evidence in the record that Theresa K. has trouble concentrating, and does not warrant remand.

        2.    *Ability to Interact With Others*

Theresa K. also argues that the Commissioner failed to account for her inability to interact with others because he found that she has friends that she visits with regularly and sometimes has trouble getting along with her family members, but she actually only has one friend, did not get along well with her mother, and her daughter does not speak to her. [Filing No. 12 at 15.] The ALJ stated that Theresa K. had trouble getting along with family members "at times," but "went out to lunch with friends; attended church; and got along with authority figures." [Filing No. 10-2 at 19.] In his RFC discussion, he noted that Theresa K. "visits with her friends regularly" and "socializes with others." [Filing No. 10-2 at 21-23.]

The ALJ cited to a Function Report Theresa K. filled out in which she stated that she goes to lunch with her friends once per month. [Filing No. 10-6 at 26.] He also cited to medical records

---

[7] Theresa K. also argues that the ALJ did not recognize that she has difficulty managing money, a poor memory, and trouble processing thoughts. [Filing No. 12 at 15.] But the ALJ acknowledged that evidence and then cited to other evidence indicating that Theresa K. "performed personal care and grooming, household chores, and [prepared] simple meals," "managed her own finances, got around as needed," "could follow simple instructions," and "tracks her medications and appointments on her own." [Filing No. 10-2 at 19.] The Court finds that the ALJ provided a clear bridge from the evidence to his conclusion that Theresa K. had only mild limitations in understanding, remembering, or applying information.

11

from Dr. Kelly Rhoadarmer, which note that Theresa K. was worried about her relationship with her daughter because her daughter was upset about Theresa K.'s ex-husband taking Theresa K. to the grocery store, but sees her sister occasionally, had just taken her sister out to dinner for her birthday, and talks with a counselor by telephone.  [Filing No. 10-7 at 55.]  The ALJ also cited to records from Theresa K.'s counselor, Isaiah Thompson, in which he notes that Theresa K. "speaks with her friends and family to assist with feeling lonely."  [Filing No. 10-7 at 153.]

As Theresa K. notes, records from her counseling sessions indicate that Theresa K. reported that she "has one friend that she will spend time with," that she has conflicts with her daughter and her daughter does not speak to her anymore, and that she struggles with her relationship with her daughter.  [Filing No. 10-7 at 8; Filing No. 10-7 at 44.]  The Court does not find the ALJ's failure to specifically note that Theresa K. does not get along with her daughter, or that she may only have one friend that she spends time with, problematic.  And Theresa K. does not explain how either of these facts would warrant a more limited RFC.  Failure to note these issues does not necessitate remand.

In sum, the Court finds that the ALJ sufficiently accounted for Theresa K.'s moderate limitations in concentration, persistence, and pace and her moderate limitations in interacting with others in the RFC, and remand on that issue is not warranted.

### B.     **Hypothetical Questions to the VE**

Theresa K. argues that the VE testified that off-task behavior ten percent or more of the time in a workday is work preclusive.  [Filing No. 12 at 16.]  She asserts that "[c]ourts have repeatedly rejected the notion that a hypothetical confining the claimant to unskilled work adequately captures limitation in concentration, persistence, and pace," and that the ALJ's hypothetical questions to the VE "accounted for only complexity and the ALJ limited the [VE] to

jobs requiring simple, repetitive tasks." [Filing No. 12 at 17-19.] Theresa K. also argues that since the ALJ used an incomplete RFC as the basis for his hypothetical questions to the VE, the hypothetical questions did not include all of the necessary information. [Filing No. 12 at 21.]

In her response, the Commissioner argues that the ALJ included the functional capacity limits from the RFC in his hypothetical questions to the VE. [Filing No. 13 at 9.]

Theresa K. does not address this argument in her reply brief. [*See* Filing No. 14.]

At the hearing, the ALJ asked the VE the following question:

> Q: Please assume a hypothetical individual the claimant's age, education, and with the past jobs that were described. Even more assume that this hypothetical individual is limited to performing, to nonexertional limitations only. Specifically, they would be limited to performing simple, routine, and repetitive tasks, but not at a production rate pace. Would be limited to performing simple work-related decisions and could have occasional contact with supervisors, coworkers, and the public. Could this hypothetical individual perform any of the past jobs you've described as actually performed or generally performed in the national economy?
>
> A: I think the warehouse worker job could be done, Your Honor. I would rule out all the other work because, well the nursing assistant is, of course, more than simple and routine, and the other two jobs involve at least frequent contact.

[Filing No. 10-2 at 45-46.] The VE also testified that if an individual was off-task at least 20 percent of the time in an eight-hour workday and absent from work at least two days per month, the individual could not work. [Filing No. 10-2 at 47.]

The Seventh Circuit has found that individuals with moderate limitations in concentration, persistence, or pace can perform "simple and repetitive light work." *Sims v. Barnhart*, 309 F.3d 424, 431-32 (7th Cir. 2002); *see also Jozefyk*, 923 F.3d at 498. It has also declined to require that ALJs use any specific phrasing in their hypothetical questions to the VE regarding moderate limitations in concentration, persistence, or pace, finding instead that the limitations can be accounted for by including a quota or pace limitation in the hypothetical questions where those

limitations come from a doctors' assessment of the claimant's abilities. *See, e.g.*, *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019).

Here, the ALJ's limitation of Theresa K. to simple, routine, and repetitive tasks was drawn from the assessments of Drs. Hill and Horton. [Filing No. 10-2 at 22 (ALJ noting that Drs. Hill and Horton opined that Theresa K. had moderate limitations with concentration, but that she "was able to understand, carry out, and remember simple instructions; make judgments commensurate with functions of simple, repetitive tasks; respond appropriately to brief supervision and interactions with coworkers and work situations; and deal with changes in a routine work setting").] The Court finds that the ALJ's hypothetical question to the VE limiting Theresa K. to simple, routine, and repetitive tasks, taken from the assessments of Drs. Hill and Horton, adequately accounted for her moderate limitations in concentration, persistence, and pace. Accordingly, the ALJ's hypothetical questions to the VE do not provide a basis for remand.

### C. Compliance With SSR 16-3p

Theresa K. argues that the ALJ's finding that Theresa K.'s statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence of record was "perfunctory and conclusory" and that the ALJ "essentially made no attempt to satisfy the requirements of SSR 16-3p." [Filing No. 12 at 22-23.] She asserts that the ALJ found that her emotional symptoms have remained stable, but that a condition can be stable and disabling at the same time. [Filing No. 12 at 23.] Theresa K. also contends that the ALJ ignored the side effects from her medication, which she claims caused symptoms of tardive dyskinesia ("TD") including that her mouth was slightly ajar, her tongue movements could be seen, she had a slight pacing movement, and she "takes steps restlessly when

14

standing up, holds her mouth open when walking, and grinds her teeth at night." [Filing No. 12 at 24.]

In response, the Commissioner argues that Theresa K.'s treating physician, Dr. Rhoadarmer, evaluated her for TD in March 2019 and found that she did not have most of the symptoms, and that a nurse practitioner also evaluated her for TD in March 2020 and found that the symptoms were not present. [Filing No. 13 at 17-18.] The Commissioner also notes that the state agency psychologists considered Dr. Rhoadarmer's TD evaluation when considering the impact of Theresa K.'s symptoms on her mental functioning and found that she was able to work. [Filing No. 13 at 18.]

Theresa K. does not specifically address this argument in her reply. [*See* Filing No. 14.]

Pursuant to SSR 16-3p, an ALJ must first determine whether there is an underlying medical impairment that could reasonably be expected to produce an individual's symptoms, such as pain. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Then, once an underlying impairment has been established, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4. In doing so, the ALJ must consider objective medical evidence, the individual's own statements, and evidence from non-medical sources, considering the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has

15

used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4-8.

Theresa K. asserts that the ALJ disregarded two things: (1) that her mental health, even if stable, could still be debilitating; and (2) that she exhibited symptoms of TD as a side effect of medication. The ALJ provided a lengthy discussion of why he found that Theresa K.'s impairments could not reasonably be expected to cause her alleged symptoms. [*See* Filing No. 10-2 at 21-23.] In that discussion, he noted that Theresa K.'s mental health had been stable, but also cited to evidence in the record regarding her ability to function and relied on the opinions of Drs. Hill and Horton that she was able to understand, carry out, and remember simple instructions; perform simple, repetitive tasks; respond appropriately to brief supervision and interaction with co-workers; and deal with changes in a routine work setting. [Filing No. 10-2 at 21-22.] In other words, he did not merely rely on the fact that her mental health had been stable. Additionally, while the ALJ did not mention that Theresa K. exhibited some symptoms of TD as a side effect of medication, Theresa K. does not explain how those side effects may have warranted a more restrictive RFC. "An ALJ need not mention every piece of medical evidence in [his] opinion, but [he] cannot ignore a line of evidence contrary to [his] conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Here, the ALJ sufficiently articulated his reasons for his conclusion – a conclusion that is not contrary to the possibility of Theresa K. exhibiting some symptoms of TD

as a side effect of medication.[8]

The ALJ's recognition that Theresa K.'s mental health was stable and his failure to mention that she had exhibited some symptoms of TD as a side effect of medication do not constitute a failure to comply with SSR 16-3p and do not warrant remand.

### D.     Assessment of Medical Source Opinions

Finally, Theresa K. argues that the ALJ ignored evidence from her individual skills training with her mental health providers, in which she exhibited disorganized thinking, anxiety, and isolation and that she needed instruction with budgeting her money effectively, identifying resources, and coordinating services and consulting so that she could live on her own. [Filing No. 12 at 28.] She asserts that the ALJ did not consider whether this evidence impacted her RFC, and that the ALJ "may not discount the opinion of an examining physician without a valid explanation." [Filing No. 12 at 28.] Theresa K. argues that there is no way of knowing what weight the ALJ gave to the medical opinions, and that the ALJ substituted his own judgment for that of medical experts. [Filing No. 12 at 29-30.]

In response, the Commissioner argues that Theresa K. applies a standard for medical source opinions analysis that was no longer in effect when she filed for disability. [Filing No. 13 at 13.] She notes that the new regulations "no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources, such as the requirement that ALJs must give

---

[8] Medical records from Dr. Rhoadamer in March 2019 are slightly inconsistent, as they indicate that there was "partial visualization of tongue movements" and "when standing, slight pacing movement," but that the symptoms of TD were not present, other than "slight tongue movements" and that Theresa K.'s mouth was "slightly ajar." [Filing No. 10-7 at 37-39.] The records also indicate, however, that Dr. Rhoadamer discussed TD with Theresa K. and she reported that she did not want to switch medications and "isn't bothered by" the side effects. [Filing No. 10-7 at 38.] A March 2020 assessment from a Nurse Practitioner reflects that, although Theresa K. complained of taking steps restlessly when standing up and holding her mouth open when walking, symptoms of TD were not present. [Filing No. 10-7 at 89-91.]

17

good reasons for the weight given a treating source opinion." [Filing No. 13 at 13-14 (quotation and citation omitted).] The Commissioner argues that the ALJ explained that he did not assign any specific weight to the medical opinions and prior administrative findings, that he did not analyze any disability decisions by other governmental agencies, and that he addressed prior medical findings from the state agency psychologists and Dr. Blake, the examining psychologist. [Filing No. 13 at 14.] The Commissioner notes that a social worker or therapist is not an acceptable medical source, and that the skills training sessions Theresa K. took part in were with behavioral health therapists who were connecting Theresa K. with community resources to find housing and other services, but who did not evaluate her abilities to perform work-related activities. [Filing No. 13 at 14-15.]

Theresa K. does not specifically address this issue in her reply. [*See* Filing No. 14.]

The SSA adopted new rules for agency review of disability claims for applications filed on or after March 27, 2017. 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The new regulations in part eliminate the treating-physician rule, which gives more weight to evidence of disability from acceptable medical source providers who have an ongoing relationship with the claimant. *Id.* The SSA "adjudicators will [now] articulate how they consider medical opinions from all medical sources, regardless of whether or not the medical source is an [acceptable medical source]." *Id.* These changes apply to Theresa K.'s application, which she submitted in September 2019.

The records to which Theresa K. points in support of her argument that the ALJ ignored certain medical evidence consist of records from her visits with Hayden Ferguson and Christopher Gray, both behavioral health therapists. At her sessions with Mr. Ferguson and Mr. Gray, Theresa K.: (1) was worried about budgeting with her new apartment; (2) was worried about being on her

own; (3) needed instruction with budgeting her money effectively "[d]ue to [her] symptoms of disorganized thinking and anxiety"; (4) was experiencing loneliness but was adapting well to living on her own; (5) had increased feelings of depression due to her loneliness, but overall was "excelling expectations with independent living"; (6) needed instruction identifying resources and how to cope with loneliness "[d]ue to [her] symptoms of disorganized thinking and isolation"; (7) was managing her budget better and maintaining her food supply with no issues; (8) got overwhelmed easily in sessions, but "has improved since living on her own but the isolation is increasing [her] depression"; (9) needed assistance with "coordinating services" "[d]ue to [her] symptoms of disorganized thinking"; and (10) needed "consulting to assure she has everything she needs to be able to live on her own," "[d]ue to [her] symptoms of disorganized thinking." [*See* Filing No. 10-7 at 70-73; Filing No. 10-7 at 104; Filing No. 10-7 at 109; Filing No. 10-7 at 118.] The records do not reflect diagnoses by a medical professional, but rather efforts to help Theresa K. manage various aspects of her life and connect with community resources. Many of the records contain the same generic reference to Theresa K.'s "symptoms of disorganized thinking," but none discuss how this could affect her ability to work.

    The Court finds that the ALJ was not required to specifically mention Theresa K.'s encounters with Hayden Ferguson and Christopher Gray, nor set forth how he weighed those encounters. The encounters were to help Theresa K. access community resources, and not to evaluate the issues that affect her ability to work. Accordingly, the ALJ was not required to factor those encounters into the RFC or to otherwise explain his consideration of them. This issue does not warrant remand.

    In short, the ALJ adequately accounted for Theresa K.'s limitations in concentration, persistence, and pace and in interacting with others; his hypothetical questions to the VE were

19

sufficient to account for those limitations; he complied with SSR 16-3p; and he did not err in failing to specifically address Theresa K.'s encounters with Hayden Ferguson and Christopher Gray. Remand is not warranted in this case.

### IV.
#### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue,* 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* The Court can find no legal basis presented by Theresa K. to reverse the ALJ's decision that she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 3/21/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**